A97A2282. CARTER v. THE STATE.
(494 SE2d 108)

BLACKBURN, Judge.

Jeffery Carter was convicted after a bench trial of violating the Georgia Controlled Substances Act and making terroristic threats. Carter appeals the trial court's denial of his motion to suppress.

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and

judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Punctuation omitted.) *Sanders v. State*, 226 Ga. App. 565, 566 (2) (487 SE2d 115) (1997).

Officer Baldwin testified at the motion to suppress hearing that at approximately 2:33 a.m., he and Officer McGonigle, who was traveling in a separate police vehicle, observed a white BMW driving extremely slowly and then suddenly speeding away. Officer Baldwin testified that his suspicions were aroused by the erratic speed of the BMW as it was driven through an area known for drug transactions. Both officers followed the BMW with Officer McGonigle's vehicle in the lead. The officers then observed the BMW make a "quick right-hand turn without using any turn signals or hand-to-arm motions." Officer McGonigle did not follow the car but proceeded in a forward direction. Officer Baldwin, in the second police vehicle, saw all three occupants in the BMW turn around to watch Officer McGonigle's vehicle. Thereafter, the driver of the BMW put the car into reverse and began to back up. Officer Baldwin then activated his emergency lights and executed a traffic stop of the BMW based upon the illegal turn.

Officer Baldwin exited his vehicle and ordered the driver of the BMW to shut off his engine, at which point Carter, the front seat passenger, exited the BMW and began to walk away. Officer Baldwin ordered Carter to get back in the car; however, Carter began to run beside a building and into the woods. Officer Baldwin chased Carter, and when he caught Carter, a struggle ensued. Officer McGonigle also gave chase and assisted in getting control of Carter when he was caught. Officer Baldwin noticed the two other occupants of the car walking toward the woods so he handcuffed Carter for "better control of the situation." At that point, Officer Baldwin saw a clear plastic bag containing several small plastic bags which contained crack cocaine hanging out of Carter's pocket.

Explaining his reasons for chasing Carter, Officer Baldwin testified that "given the hour, given the suspicious behavior of the occupants of the vehicle, given the area, given the fact that he ran when I — when I ordered him back inside the vehicle, for officers' safety, for my safety, for Officer McGonigle's safety, I chased Mr. Carter." After questioning from the court, Officer Baldwin further explained "we only had two officers, we had three occupants, we were taught in the academy that it could be used as a distraction. And that concerned us, especially in the area that we were in. So we needed to — we didn't know if he'd to [sic] circle around or if he was just running, or what he was running for, what his — or what his motives were. So for, for our safety, he needed to be detained until we could, until we

could figure out exactly what was going on."

In *Maryland v. Wilson*, 519 U. S. ___ (117 SC 882, 137 LE2d 41) (1997), the United States Supreme Court determined that a police officer executing a valid traffic stop was authorized to order the front seat passenger out of the car. The Court explained, "the touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security, and that reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." (Citations and punctuation omitted.) 137 LE2d at 46. In discussing a case regarding a police officer's authority to order the driver of a car validly stopped to get out of the car, the Supreme Court stated that "[o]n the public interest side of the balance, we noted that the State freely conceded that there had been nothing unusual or suspicious to justify ordering [the driver] out of the car, but that it was the officer's practice to order all drivers stopped in traffic stops out of their vehicles as a matter of course as a precautionary measure to protect the officer's safety. *We thought it too plain for argument that this justification — officer safety — was both legitimate and weighty.*" (Citation and punctuation omitted; emphasis supplied.) Id. The Supreme Court went on to find that the same justification — officer safety — was sufficient to support the officer's conduct in ordering a passenger out of a validly stopped vehicle. 137 LE2d at 48. Although the Supreme Court specifically declined to address the issue presented by the present case, id. at n. 3, the analysis for the intrusion into the passenger's right to be free from arbitrary interference by law officers remains the same. Furthermore, in *Maryland v. Wilson*, the Supreme Court relied upon their opinion in *Michigan v. Summers*, 452 U. S. 692 (101 SC 2587, 69 LE2d 340) (1981), wherein they determined an officer was justified in requiring the defendant to re-enter the residence and remain while a search warrant was executed. *Maryland v. Wilson*, supra, 137 LE2d 48.

In the present case, we must consider whether officer safety is sufficient justification to allow an officer to order a passenger to remain in a validly stopped vehicle. Under the limited facts of this case, we find that it does. On the public interest side of the balance, there is the already recognized weighty interest of officer safety. On the personal liberty side of the balance in the present case, there is a minimal intrusion by detaining the passenger while the officer completes the traffic stop. The facts are clear that the passenger was not attempting to get out of the car prior to the traffic stop. By backing up the vehicle after all occupants watched to make sure the first officer's car passed, the facts actually indicate an attempt to elude the police rather than an act of dropping off a passenger. Addition-

ally, under the facts of this case the officer's justification in fearing for his safety if the passenger was allowed to leave the scene is even more weighty because of the suspicious behavior which occurred prior to the passenger's attempt to run away.

"Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." (Punctuation omitted.) *State v. McFarland*, 201 Ga. App. 495, 496 (411 SE2d 314) (1991). In *State v. Billoups*, 191 Ga. App. 834, 835 (383 SE2d 198) (1989), we reversed the trial court's grant of the defendant's motion to suppress finding that the totality of the circumstances, the time of day, the location, and the defendant's flight provided "probable cause for a belief that [the defendant] was in possession of unlawful contraband." The mere fact that the suspicious person was sitting in a car and not standing on the sidewalk should not change the analysis.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 17, 1997.

*Corinne M. Mull*, for appellant.

*J. Tom Morgan*, District Attorney, *Barbara B. Conroy*, *Robert W. Houman*, Assistant District Attorneys, for appellee.