A00A1334. ESPINOZA v. THE STATE.
A00A1335. VASQUEZ v. THE STATE.
(534 SE2d 824)

MCMURRAY, Senior Appellate Judge.

A Gwinnett County jury convicted co-defendants Indorfo Espinoza and Polinar Vasquez of a single count of possession of marijuana with intent to distribute.[1] They were sentenced to ten years confinement to serve eight and six years, respectively. Separately, they appeal upon entry of the judgment of conviction and the sentence imposed by the superior court. Inasmuch as their claims are identical in part and arise upon the same set of facts, we have consolidated their cases for disposition on appeal. *Held*:

Viewed in a light most favorable to the jury's verdicts, the evidence shows that on August 5, 1998, a suspected drug trafficker, a man named Arzate, was placed under surveillance at a Smyrna apartment by Special Agent Jeffery Dalman, United States Drug Enforcement Administration ("DEA"), acting on a lead provided by another DEA office. When Arzate left the Smyrna residence in a pickup truck registered to a California man from whom 100 pounds of marijuana had been seized, Special Agent Dalman followed, eventually losing Arzate in the vicinity of Lilburn. Thinking that Arzate might reappear at the Lilburn residence where, two years earlier, the agent had seized 1,500 pounds of marijuana in conjunction with a drug trafficking arrest, Dalman went to that location, found Arzate's truck, and initiated a second surveillance. Among other things, Special Agent Dalman noted the presence of a Ford van which was backed into the carport of the residence. After about an hour, three vehicles departed the residence in what appeared to be a convoy. Arzate, driving his pickup, led. In the second vehicle, the Ford van,

---

[1] In February 1999, an accusation was filed against the co-defendants in the cases sub judice and two others: Cesar Hernandez and Juan Albarran. Hernandez entered a guilty plea upon his arraignment in March 1999. A jury returned guilty verdicts against the co-defendants herein and Albarran later that month.

driven by Cesar Hernandez, Vasquez rode as a passenger. Espinoza rode as a passenger in the third vehicle, a Ford Taurus, driven by Juan Albarran. As the three vehicles approached Interstate 85, contact was again lost with Arzate as he pulled away from the group in the pickup onto I85 southbound while the remaining vehicles stopped at a gas station where the van was refueled. The vehicles then entered I85 northbound where, based on the totality of the circumstances, Special Agent Dalman ordered them stopped. Gwinnett County Police Officer Dan Llorens, who assisted in the traffic stop, testified that Hernandez consented to a search of the van. In the search which followed, a second Gwinnett County police officer assisting on the scene, Officer Gary Linder, found a black duffel bag containing 25 pounds of marijuana under the van's back bench seat.

### Case No. A00A1334

1. Espinoza enumerates that the superior court erred in denying his motion in limine to prevent the State's witnesses from referring to the Lilburn residence as a known drug house, impermissibly placing his character in issue. The record, however, shows that the State's witnesses referred to the Lilburn residence not as a known drug house, but as the place where Special Agent Dalman arrested a drug trafficker in 1996 after seizing 1,500 pounds of marijuana. No evidence associated Espinoza with the Lilburn residence at the time of the 1996 arrest at that location. Under these circumstances, Espinoza's character was never placed in issue, foreclosing his argument on appeal and the capacity to show prejudice.[2] Moreover, "[Espinoza's] failure to request a curative instruction waives [the] issue."[3] This claim of error is therefore without merit.

2. Espinoza further contends that the superior court erred in allowing the State's attorney to prove Espinoza's ownership of the van in the cases sub judice by an uncertified report provided by the Georgia Crime Information Center (GCIC). In this regard, Officer Linder testified over objection that a departmental GCIC computer search for the van's tag number "return[ed]" Espinoza as the owner of the vehicle. Inasmuch as the State offered a sworn witness to show ownership of the van in Espinoza upon a proper GCIC computer search, the superior court did not err in admitting it over Espinoza's objection for lack of foundation.[4] In any event, Espinoza's own witness testified that he owned the van in issue. " '(A) party cannot com-

---

[2] *Helton v. State*, 235 Ga. App. 22, 23 (1) (508 SE2d 697).
[3] Id., citing *Simmons v. State*, 266 Ga. 223, 226 (2) (c) (466 SE2d 205); *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434).
[4] *Jackson v. State*, 228 Ga. App. 877, 878 (1) (492 SE2d 897).

plain of error that [his] own legal strategy, trial procedure or conduct aided in causing.' [Cit.]"[5]

3. The superior court did not err in sentencing Espinoza for possession of marijuana with intent to distribute for lack of evidence of intent to distribute. It is uncontroverted in the evidence that twenty-five pounds of usable marijuana, packaged in three plastic bags, was seized from the van driven by Espinoza. We adhere to the holding in *Miller v. State*:[6] "20 pounds of usable marijuana[,] . . . some of which was already bagged, is inconsistent with the simple possession of marijuana for personal use."[7]

### Case Nos. A00A1334 and A00A1335

4. Defendants contend that the superior court erred in denying their motions to suppress the search of the van. We disagree.

The evidence shows that defendants rode as passengers in vehicles which they did not own — Espinoza rode as the passenger in the Taurus owned by Hernandez and driven by Albarran; Vasquez rode as the passenger in the van owned by Espinoza. "Where the owner of an automobile relinquishes actual possession to a third party, the owner thereby *abandons any expectation of privacy* in the automobile, and he therefore *lacks standing* to contest the legality of the search and seizure of the vehicle."[8]

Consequently, defendants lack standing to challenge the search and seizure in the cases sub judice. Even were this not the case and notwithstanding defendants' arguments to the contrary, there was evidence which established the legality of the search and seizure as based upon a traffic stop supported by articulable suspicion[9] and valid consent given thereafter. In this regard, the evidence showed that Special Agent Dalman ordered the stop upon the reasonable suspicion that the co-defendants were involved in drug trafficking. He observed defendants in the company of Arzate, a man DEA suspected to be a drug trafficker; Arzate had appeared at the Lilburn residence where Special Agent Dalman had earlier arrested an individual for drug trafficking and seized marijuana; the pickup truck

---

[5] *Sharpe v. Dept. of Transp.*, 270 Ga. 101, 103 (505 SE2d 473).

[6] 155 Ga. App. 399 (270 SE2d 822).

[7] Id. at 401 (II).

[8] (Emphasis supplied.) *Prothro v. State*, 186 Ga. App. 836, 838 (3) (368 SE2d 793), citing *United States v. Dyar*, 574 F2d 1385, 1390 (6) (5th Cir.), cert. denied, 439 U. S. 982 (99 SC 570, 58 LE2d 653); see also *Gresham v. State*, 204 Ga. App. 540, 541 (1) (420 SE2d 71).

[9] *Carter v. State*, 229 Ga. App. 417, 420 (494 SE2d 108) ("An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.") (citations and punctuation omitted).

Arzate drove was a vehicle registered to a man DEA knew to have been arrested for drug trafficking; and, on leaving the Lilburn residence, Arzate and defendants proceeded in a convoy, a technique Special Agent Dalman testified was consistent with drug trafficking. It is settled that the driver of a vehicle may consent to a search thereof,[10] and there is here evidence that Hernandez validly[11] did so without evidencing fear or apprehension upon Officer Llorens's request for consent given in Spanish with no gun drawn.

"In reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the court's decision. [Cit.]"[12] Such a basis here exists. Under all of these circumstances, the superior court properly denied defendants' motions to suppress in the cases sub judice.

5. Finally, defendants challenge the sufficiency of the evidence contending: (a) that the superior court erred in denying their motions for directed verdict at the close of the evidence, and (b) that the evidence was insufficient to support the verdict.

On appeal the evidence must be viewed in the light most favorable to support the verdict, and [the co-defendants] no longer enjoy[ ] a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the [standard] of *Jackson v. Virginia*,[13] the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the [co-defendants were] guilty of the charged offense. Moreover, the test established in *Jackson* is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.[14]

Sufficient circumstantial evidence was presented at trial to establish that the co-defendants had at least joint constructive possession of

---

[10] *Pupo v. State*, 187 Ga. App. 765, 767 (5) (371 SE2d 219), citing *United States v. Matlock*, 415 U. S. 164, 171 (94 SC 988, 39 LE2d 242, 249-250).

[11] *Harris v. State*, 239 Ga. App. 537, 540 (2) (b) (521 SE2d 462) ("Having effected a valid traffic stop, the officers were authorized to request consent to search the automobile." [Cit.]).

[12] *State v. Dills*, 237 Ga. App. 165, 168 (514 SE2d 917).

[13] 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

[14] (Citations and punctuation omitted.) *Lowery v. State*, 242 Ga. App. 375-376 (530 SE2d 22).

the marijuana.[15] Although mere spatial proximity is not enough to show such intent to exercise control,[16] circumstantial evidence sufficiently proving that the co-defendants were parties to the crime is sufficient to show joint constructive possession of the drugs.[17] In the cases sub judice, the evidence shows that Espinoza and Vasquez lived together in North Carolina and traveled together to Lilburn for the purpose of procuring contraband and returning it to North Carolina. To this end, they undertook substantial steps to bring the contraband home safely, electing to travel by convoy on the return trip and to ride "shotgun" as passengers in vehicles they did not own, to provide both security and deception to their illicit endeavor. That 25 pounds of marijuana was seized from the van, in the totality of the circumstances, was sufficient evidence upon which the jury[18] might reasonably have inferred that the co-defendants had at least joint constructive possession of marijuana with the intent to distribute.[19]

Thus, we conclude that the superior court did not err in denying the co-defendants' motions for directed verdict and that a rational trier of fact could have found each of the co-defendants guilty of possession of marijuana with the intent to distribute beyond a reasonable doubt.[20]

*Judgments affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MAY 18, 2000.

*Charles A. Tingle*, for appellant (case no. A00A1334).
*Robert Greenwald*, for appellant (case no. A00A1335).
*Daniel J. Porter, District Attorney, John S. Melvin, Assistant District Attorney*, for appellee.

---

[15] *Moody v. State*, 232 Ga. App. 499, 501 (1) (502 SE2d 323) ("A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. Such intent to exercise control may be inferred by the totality of the circumstances.") (citations and punctuation omitted).

[16] *Leonard v. State*, 228 Ga. App. 792, 796 (3) (492 SE2d 747), citing *Walden v. State*, 196 Ga. App. 844 (397 SE2d 182).

[17] Id.

[18] *Moody v. State*, 232 Ga. App. at 501-502 (1), supra (whether circumstances sufficient in a given case to exclude every reasonable hypothesis except guilt of accused is primarily a jury question).

[19] *Miller v. State*, 155 Ga. App. at 401 (II), supra.

[20] *Lowery v. State*, 242 Ga. App. at 375-376, supra; *Allen v. State*, 191 Ga. App. 623, 625 (2) (382 SE2d 690).