**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

JAMAL WILLIAMS, aka Jamal
Abdullah,
              *Defendant-Appellant.*

No. 04-10213

D.C. No.
CR-03-40081-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
June 14, 2005—San Francisco, California

Filed August 16, 2005

Before: Richard C. Tallman, Jay S. Bybee, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Tallman

10763

**COUNSEL**

Jerome E. Matthews, Assistant Federal Public Defender, Oakland, California, for the defendant-appellant.

Erika R. Frick, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

**OPINION**

TALLMAN, Circuit Judge:

Jamal Williams appeals the district court's order denying his motion to suppress as evidence a gun recovered when the car in which he was a passenger was stopped for a traffic infraction, and Williams, after being ordered to get back inside the car, threw the weapon out of the passenger window. While it is well established that an officer effecting a lawful traffic stop may order the driver and the passengers out of a vehicle, *Maryland v. Wilson*, 519 U.S. 408, 410 (1997), we consider for the first time in this circuit whether an officer may order a passenger who voluntarily gets out of a lawfully stopped vehicle *back into* the automobile without violating the passenger's Fourth Amendment rights. In upholding the officer's discretion to control the situation as he or she deems necessary to ensure the safety of the officer and the vehicle occupants, we answer in the affirmative the question explicitly left open by the *Wilson* Court. *Id.* at 415 n.3 (finding it unnecessary to consider whether "an officer may forcibly detain a passenger for the entire duration of the stop"). We now hold that a passenger's compliance with an officer's command to get back into the car in which the passenger had just exited is not an unreasonable seizure under the Fourth Amendment.

I

In the early morning hours of December 20, 2004, Officer E. Mausz of the Oakland Police Department, alone on patrol in a marked police cruiser, observed an automobile to be driving in violation of California Vehicle Code § 24601, which requires all vehicles "to illuminate with a white light the rear license plate during darkness and render it clearly legible from a distance of 50 feet to the rear." Monica Miller was driving while Williams rode in the front passenger seat. Officer Mausz engaged his patrol car's lights and siren, and

attempted to effect a traffic stop. Miller, however, did not immediately pull over. Instead, she drove a short distance, passing several safe places to pull over, before eventually bringing the car to a complete stop in a parking lot.

After the vehicle had stopped, but before Officer Mausz could approach the driver of the vehicle, Williams opened the passenger door of the car and got out. Officer Mausz immediately ordered Williams to get back into the car, and Williams complied.

Officer Mausz then walked to the driver's window and asked Miller for her license or identification. When Miller explained that she did not have either, Officer Mausz asked her to step out of the vehicle, and then handcuffed her and escorted her back to his patrol car. While the officer walked Miller to his cruiser, he heard a thud outside Miller's car. After placing Miller inside his patrol car, Officer Mausz walked over to the area from which he had heard the noise, and observed a Taurus revolver approximately six feet away from the car, lying on top of some recently fallen pine needles. A backup officer then arrived on the scene and secured the weapon.

Williams was later charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Williams moved to suppress as evidence the gun, arguing that he was illegally seized during the traffic stop when Officer Mausz ordered him back into Miller's car. The district court denied his motion without a hearing. Williams then pled guilty, reserving his right to challenge the district court's ruling. Fed. R. Crim. P. 11(a)(2).

The district court sentenced Williams to 51 months imprisonment. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

II

**[1]** "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968) (internal quotation marks omitted); *see also Wilson*, 519 U.S. at 411. Whether a seizure is reasonable turns " 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' " *Mimms*, 434 U.S. at 109 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). The district court's determination that a search was reasonable under the Fourth Amendment is reviewed *de novo*. *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994).

**[2]** In *Wilson*, the Supreme Court considered whether police officers can order a passenger out of a lawfully stopped vehicle under the Fourth Amendment, balancing the passenger's liberty interest with the public interest in officer safety. 519 U.S. at 413-14.[1] The *Wilson* Court recognized that the passenger's liberty interests are stronger than the interests of the driver because, although there is probable cause to stop the driver based on the traffic infraction, "there is no such reason to stop or detain the passengers." *Id.* at 413. However, the Court reasoned that the additional intrusion was minimal because: "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle," and thus, "[t]he only change in [the passengers'] circumstances which will result from ordering them out of the car is that they will be

---

[1]There is no dispute that the initial traffic stop was lawful. The officer had sufficient cause to believe that the driver was violating Cal. Veh. Code § 24601, and properly effected a stop of Miller's vehicle. *United States v. Garcia*, 205 F.3d 1182, 1186-87 (9th Cir. 2000). The only question we address is whether the officer's subsequent order to Williams to get back into the car was reasonable under the Fourth Amendment.

outside of, rather than inside of, the stopped car." *Id.* at 413-14.

**[3]** The Court held, however, that the strong public interest in officer safety outweighed the minimal intrusion on a passenger's personal liberty interest. *Id.* at 413-15. Drawing primarily on the logic of *Mimms*, the *Wilson* Court emphasized the important public interest in maintaining officer safety, specifically quoting statistics of assaults and homicides on officers while enforcing traffic laws. *Id.* at 413; *see also Mimms*, 434 U.S. at 110 ("[I]t [is] too plain for argument that [public concern for] . . . the safety of the officer [ ] is both legitimate and weighty.").

**[4]** Those circuits to address the issue post-*Wilson* have agreed that officers may detain passengers during a traffic stop, whether it is by ordering the passenger to remain inside the automobile or by ordering the passenger to get back into an automobile that he or she voluntarily exited. *See, e.g.*, *Rogala v. District of Columbia*, 161 F.3d 44, 53 (D.C. Cir. 1998) (holding that a passenger ordered by police to get back into the vehicle that she voluntarily exited was not an unreasonable seizure because "a police officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop") (emphasis in original); *United States v. Moorefield*, 111 F.3d 10, 13 (3d Cir. 1997) (passenger who attempted to voluntarily exit a lawfully stopped vehicle was not unreasonably seized when the officer ordered him to get back into the automobile and keep his hands in the air).[2]

[2]A number of state courts agree. *See, e.g.*, *Carter v. State*, 494 S.E.2d 108, 109 (Ga. Ct. App. 1997) (officer may order passengers to remain inside a lawfully stopped vehicle); *State v. Webster*, 824 P.2d 768, 770 (Ariz. Ct. App. 1991) (officer may order passenger back inside a lawfully stopped vehicle); *see also People v. Gonzalez*, 704 N.E.2d 375, 382-83 (Ill. 1998) ("it is reasonable for a police officer to . . . instruct a passenger to remain at the car, when that passenger, of his own volition, exits the

**[5]** We agree with our sister circuits. The intrusion here is minimal and the rationale of the Court in *Wilson* and *Mimms* is instructive. As the *Wilson* Court noted, there is little infringement on the passenger's liberty in ordering him or her out of the car because only the passenger's location during the stop is affected. 519 U.S. at 414; *see also Mimms*, 434 U.S. at 111 (holding that the intrusion on the driver's liberty is minimal where "the only question is whether [the driver] shall spend that period sitting in the . . . car or standing alongside it"). We think the difference in ordering the passenger back inside the car is immaterial.

**[6]** When Williams attempted to exit the vehicle, the automobile had already been lawfully stopped with him inside. The officer's order to get back into the automobile merely maintained the status quo by returning the passenger to his original position as an occupant inside the car. Just as in *Wilson* and *Mimms*, little is changed upon compliance with the officer's order except the position of the passenger. At most, such an order to re-enter a car that the passenger voluntarily entered, and just exited, cannot be characterized by anything but a "mere inconvenience," *Terry*, 392 U.S. at 17, that we think falls far short of a "serious intrusion upon the sanctity

lawfully stopped vehicle at the outset of the stop"); *Harris v. Commonwealth*, 500 S.E.2d 257, 261 (Va. Ct. App. 1998) ("officers may . . detain passengers beside an automobile until the completion of a lawful traffic stop"). *But see, e.g.*, *People v. Dixon*, 21 P.3d 440, 445-46 (Colo. Ct. App. 2000) (passenger was unreasonably seized when ordered back into a vehicle that he voluntarily exited). Other state courts have held that an officer may not detain passengers who voluntarily attempt to exit the automobile unless it is supported by reasonable suspicion of dangerousness or criminal activity. *Dennis v. State*, 693 A.2d 1150, 1152 (Md. 1997), *cert. denied*, *Maryland v. Dennis*, 522 U.S. 928 (1997) (passenger who attempts to walk away from traffic stop cannot be detained absent reasonable suspicion of dangerousness or criminal activity); *Wilson v. State*, 734 So. 2d 1107, 1112 (Fla. Ct. App. 1999), *review denied*, 749 So. 2d 504 (Fla. 1999), *cert. denied*, 529 U.S. 1124 (2000) (same); *Walls v. State*, 714 N.E.2d 1266, 1267-68 (Ind. Ct. App. 1999) (same).

of the person," or even a "petty indignity." *Mimms*, 434 U.S. at 111; *see also Moorefield*, 111 F.3d at 13 ("imposition of having to remain in the car with raised hands" was "minimal").

**[7]** Furthermore, the public concern for officer safety here is as weighty as it was in *Wilson*. We have no reason to believe, nor has Williams provided any evidence to the contrary, that traffic stops today present safer encounters for police officers than they did less than ten years ago when *Wilson* was decided. We are convinced that in this case the continuing importance of, and the public interest in, promoting officer safety outweighs the marginal intrusion on personal liberty. *Rogala*, 161 F.3d at 53; *Moorefield*, 111 F.3d at 13; *see also Mimms*, 434 U.S. at 111 ("What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.").

Williams argues that where a significant portion of the danger inheres in the fact that occupants can "make unobserved movements" inside the vehicle, *Mimms*, 434 U.S. at 110, and that weapons may be concealed and available within the interior of the passenger compartment, *Wilson*, 519 U.S. at 414, ordering a passenger *back* into the vehicle makes little sense from the standpoint of officer safety. *See, e.g.*, *Wilson v. State*, 734 So. 2d 1107, 1111 (Fla. Ct. App. 1999), *review denied*, 749 So. 2d 504 (Fla. 1999), *cert. denied*, 529 U.S. 1124 (2000) (risk of "passenger access to weapons potentially concealed inside a car[ ] would be increased if passengers were forced back *inside* the vehicle") (emphasis in original).

That argument, however, fixates on only one rationale for the rule announced in *Wilson*, and ignores a substantial portion of the Court's full reasoning. Concluding that an officer may order a passenger out of the car, the *Wilson* Court enunciated two specific rationales why the rule was justified by the concern for officer safety. First, the Court explained that "[o]utside the car, the passengers will be denied access to any

possible weapon that might be concealed in the interior of the passenger compartment." *Wilson*, 509 U.S. at 414; *see also Mimms*, 434 U.S. at 110 ("a face-to-face confrontation diminishes the possibility [ ] that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault"). Second, noting the usefulness of its prior reasoning in holding that "officers had the authority to require [an occupant of a home] to re-enter the house and to remain there while [police] conducted their search" pursuant to a warrant, the *Wilson* Court recognized the value of giving officers control over the movements of people involved in a traffic stop as helpful in limiting the risk of danger to the police and the occupants of the car. *Wilson*, 519 U.S. at 414 (explaining that even where "no special danger to the police is suggested by the evidence in th[e] record" certain situations are sufficiently volatile such that "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation") (quoting *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981)).

**[8]** That second rationale is particularly applicable here. Giving officers the authority to control all movement in a traffic encounter is sensibly consistent with the public interest in protecting their safety. *Wilson*, 519 U.S. at 414; *Rogala*, 161 F.3d at 53 ("[I]t follows from *Maryland v. Wilson* that a police officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop[.]") (emphasis in original). Allowing a passenger, or passengers, to wander freely about while a lone officer conducts a traffic stop presents a dangerous situation by splitting the officer's attention between two or more individuals, and enabling the driver and/or the passenger(s) to take advantage of a distracted officer. *Cf. Ruvalcaba v. Los Angeles*, 64 F.3d 1323, 1327 (9th Cir. 1995) (noting that "it may be more dangerous to have the driver outside the vehicle while one or more other passengers are left inside . . . making it difficult, if not impossible, for the officer to keep a close watch on

these passengers"). Balancing the competing interests does not require us to ignore real dangers to officers, especially in light of the minimal intrusion. *Mimms*, 434 U.S. at 111.

**[9]** In the final calculus, we think it best left to the discretion of the officers in the field who confront myriad circumstances we can only begin to imagine from the relative safety of our chambers. We hold that under the Fourth Amendment it is reasonable for an officer to order a passenger back into an automobile that he voluntarily exited because the concerns for officer safety originally announced in *Wilson*, and specifically the need for officers to exercise control over individuals encountered during a traffic stop, outweigh the marginal intrusion on the passenger's liberty interest.

## III

We refuse to address the government's alternative argument that Williams lacks standing to challenge the suppression of the gun because he willfully abandoned his interest in the firearm by allegedly tossing it out of the passenger window. Not only did the government fail to raise that argument to the district court, *ALLTEL Information Servs., Inc. v. F.D.I.C.*, 194 F.3d 1036, 1043 n.9 (9th Cir. 1999) (arguments not raised before the district court are deemed waived), but because we conclude that ordering Williams to get back inside the automobile was not an unreasonable seizure, the government's argument is moot.

**AFFIRMED.**