[No. H029524. Sixth Dist. Apr. 30, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR MORENO VIBANCO, Defendant and Appellant.

**COUNSEL**

Mary J. Greenwood, Public Defender, David W. Epps, Alternate Public Defender, and Stephen B. Elrick, Deputy Alternate Public Defender, for Defendant and Appellant.

Bill Lockyer and Edmond G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share, Amy Haddix and Laurence Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, Acting P. J.**—Defendant Arthur Moreno Vibanco was a passenger in a Cadillac that was stopped by two police officers based on their observations of a cracked windshield and a missing front license plate. (Veh. Code, §§ 5200, 26710.) There were four people inside the car. Defendant, the right rear passenger, attempted to walk away from the car stop but was ordered by the officers first to stay inside the car and then to exit it. While one officer was focused on the driver, the second officer asked defendant for identification. Defendant gave the officer a suspected forged driver's license. He was later charged by information with six felonies and one misdemeanor. He filed a motion to suppress evidence (Pen. Code, § 1538.5),[1] contending that the officers unlawfully detained and searched him. The trial court granted the motion, finding that defendant was unlawfully detained "when he attempted to walk away from a stopped car in which he was a mere passenger." The case was dismissed and the People appeal.

In this case we are asked to determine whether officers may, pursuant to a lawful traffic stop, reasonably order a passenger to stay in or step out of the

---

[1] Further unspecified statutory references are to the Penal Code.

car for officer safety reasons, and thereafter ask the passenger for identification. We conclude that the officers' detention of defendant and request for identification in this case was lawful. Therefore, we will reverse the dismissal order and remand the matter with directions to deny the motion to suppress evidence.

## BACKGROUND

Defendant was charged by information with receiving stolen property (§ 496, subd. (a); count 1), check forgery (§ 470, subd. (d); count 2), possessing a forged unfinished check (§ 475, subd. (b); count 3), possessing a forged driver's license (§ 470b; count 4), unlawful acquiring of access cards (§ 484e; count 5), false personation (§ 529; count 6), and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 7). The information further alleged that defendant was out of custody on bail at the time of the current offenses (§ 12022.1), and that he had a prior strike conviction (§ 1170.12).[2] Defendant filed a motion to suppress evidence obtained by police officers on June 6, 2005, the day of the car stop. The People opposed the motion, contending in part that the officers reasonably asked defendant to stay at the stopped vehicle in the interest of the officers' safety. The testimony at the September 9, 2005 hearing on the motion to suppress was as follows.

San Jose Police Officers Brian Shab and Topui Fonua were on routine patrol in uniform, but in an unmarked patrol car, on June 6, 2005. Around 8:15 p.m., which was dusk, and while driving on White Road near McKee, which was in a high-crime area known for drug-related activity, they saw a Cadillac with a cracked windshield and without a front license plate. There were four people inside the car. The officers initiated a traffic stop by using the patrol car's flashing lights, and Anthony Renteria, the driver of the Cadillac, pulled over.

Officer Shab approached the driver's side of the Cadillac as Officer Fonua was getting out of the patrol car. Officer Shab testified that he "saw the right rear passenger door open, and [defendant] begin to exit the vehicle." Officer Shab "ordered him back in the vehicle. At the same time [Officer Shab] noticed Mrs. Moreno reaching in underneath her shirt into her waistband area." Moreno was the left rear passenger. "Initially, [Officer Shab] was fearing that she could possibly be arming herself or destroying evidence," so

---

[2] Jacklyn Marie Moreno, the left rear passenger of the stopped car, was charged in the same information with six felonies and two misdemeanors. Moreno is not a party to this appeal.

the officer "told her to stop what she was doing and show . . . her hands." Moreno did as she was ordered. "In order to stabilize the situation" because there were "too many things going on at one time" and he was afraid the officers "were starting to lose control of the car stop," Officer Shab then decided to have everybody exit the Cadillac. He directed all of the occupants to get out of the Cadillac and to sit on the curb between the Cadillac and the patrol car.

Officer Fonua testified that, as he was getting out of the patrol car he saw defendant exiting the right rear of the Cadillac. Officer Fonua "told him to get back in." "[I]t took [defendant] a little bit to . . . figure out what [Officer Fonua] was trying to tell him. But with what ensued shortly thereafter on [Officer Shab's] side of the car, [Officer Fonua] just brought him back to the back of the [Cadillac]." As defendant "just stood there," Officer Shab "was instructing the female to . . . stop what she was doing." Officer Shab then decided to have all of the Cadillac occupants exit the car and sit on the curb.

While Officer Shab "was still getting the driver out of the vehicle," Officer Fonua asked defendant for identification. Defendant gave Officer Fonua a driver's license in the name of Juan Paulo La Cuarto Gonzales. Officer Fonua did not believe that the license belonged to defendant because, in Officer Fonua's opinion, the picture on the license was not defendant. Officer Fonua asked defendant his name, and the only name defendant could give was Gonzales. Officer Fonua asked defendant his birth date, but defendant did not know what it was. Officer Fonua gave the license to Officer Shab, told him that defendant was falsely impersonating the person on the license, and attempted to place defendant in handcuffs. Defendant stood up and ran across the street. The officers caught defendant, took him to the ground, and placed him in handcuffs. While doing so, Officer Shab ordered the other three people not to move. After defendant was brought back to the curb, the officers requested identification from the other three people.

Officer Shab checked their identifications with communications. The officers learned that Moreno had several outstanding felony arrest warrants and that defendant had a $250,000 felony arrest warrant for fraud. Defendant was placed under arrest. In a search incident to that arrest, an American Express card with the name scratched off was found in defendant's pants pocket. Pedro Vibanco, who had been sitting in the front passenger seat, was on active parole. He was placed under arrest because he appeared to be under the influence of a stimulant. Officer Shab patsearched him, but no narcotics were found on his person. Officer Shab also patsearched Renteria for weapons but found none.

The officers decided to search the Cadillac for evidence of narcotics and fraud. Nothing was found inside the passenger compartment of the car. However, in the trunk the officers found a black backpack containing a blue folder. Inside the folder were several washed checks, several blank checks, several pieces of suspected stolen mail, credit cards, and a letter addressed to defendant.

At the conclusion of the testimony at the suppression hearing, the prosecutor argued to the court that, when officers stop a vehicle for an infraction, the officers have the power to detain all occupants of the car if there is a reason for the officers to suspect that the occupants may be a threat to the officers. "I think it's only common sense for the courts to find that officers have to control the scene. They can't just have people going off in every direction when they do a car stop. It's an indication that there's something in that car that they don't want the police to know about or that they are fleeing because of some sort of consciousness appeal [*sic*], which is what the case was here where he knew that he had a $250,000 warrant. So he's getting the heck out of here. [The officers] reasonably stopped this guy to find out what's going on here." The prosecutor further argued that in cases dealing with detentions during the service of arrest and search warrants, the courts have used a balancing test. "And the balancing test says that you have to evaluate the danger to the officer, officer safety. You balance that against, in this case, the slight inconvenience of waiting a few minutes until the officers can figure out what's going on here."

Defendant argued that passengers cannot be detained without reasonable and articulable facts that would lead officers to believe that the passengers have committed a crime. Defendant argued that he did nothing other than exit the Cadillac before he was ordered back, and therefore his detention was unlawful.

In granting defendant's motion to suppress on September 9, 2005, the court relied on *People v. Gonzalez* (1992) 7 Cal.App.4th 381 [8 Cal.Rptr.2d 640] (*Gonzalez*), and stated: "I just think that when you—if I do the balancing test that [the People] recommend, this is unlike a search warrant; it's unlike an arrest warrant. It's a crack in a windshield. There's no probable cause to stop the defendant from exiting the car and continuing on his journey."

On October 21, 2005, the prosecutor informed the court that, as a result of the ruling on defendant's motion to suppress, the People were unable to proceed with the case against defendant. The court dismissed the charges against defendant pursuant to section 1385. The People filed a timely notice of appeal. (§ 1238, subd. (a)(7).)

## DISCUSSION

*Standard of Review*

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Ramos* (2004) 34 Cal.4th 494, 505 [21 Cal.Rptr.3d 575, 101 P.3d 478].)

*Analysis*

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures of persons, including unreasonable investigative stops. (*Terry v. Ohio* (1968) 392 U.S. 1, 19 & fn. 16 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *United States v. Sharpe* (1985) 470 U.S. 675, 682 [84 L.Ed.2d 605, 105 S.Ct. 1568]; see also *People v. Souza* (1994) 9 Cal.4th 224, 229 [36 Cal.Rptr.2d 569, 885 P.2d 982].) ■ With respect to seizures, "[a] seizure occurs whenever a police officer 'by means of physical force or show of authority' restrains the liberty of a person to walk away." (*People v. Souza, supra*, at p. 229, citing *Terry v. Ohio, supra*, at p. 19; see also *California v. Hodari D.* (1991) 499 U.S. 621, 625–626 [113 L.Ed.2d 690, 111 S.Ct. 1547].)

■ "Under the cases, an officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1082–1083 [45 Cal.Rptr.3d 8, 136 P.3d 810].) In this case, it is not disputed that the officers stopped the car upon reasonable suspicion of Vehicle Code violations. ■ "[T]he lack of a front license plate has long been recognized as a legitimate basis for a traffic stop. [Citations.]" (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136 [45 Cal.Rptr.3d 66, 136 P.3d 859] (*Saunders*).) It is also unlawful to operate any motor vehicle on a public street when the windshield is in such a defective condition as to impair the driver's vision. (Veh. Code, § 26710.) Therefore, the officers had ample justification for instituting a traffic stop to investigate the Cadillac's missing front license plate and cracked windshield.

It is well settled that the driver of a vehicle that is the subject of a traffic stop is seized within the meaning of the Fourth Amendment. (*Whren v. United States* (1996) 517 U.S. 806, 809–810 [135 L.Ed.2d 89, 116 S.Ct. 1769].) The question whether a passenger in the vehicle is also seized at the time of the traffic stop, within the meaning of the Fourth Amendment, is currently

pending before the United States Supreme Court. (See *People v. Brendlin* (2006) 38 Cal.4th 1107 [45 Cal.Rptr.3d 50, 136 P.3d 845], cert. granted Jan. 19, 2007, *sub nom. Brendlin v. California*, 127 S.Ct. 1145 [166 L.Ed.2d 910].) We need not address or decide that issue, however, because here the question before us is whether defendant, a passenger in the Cadillac, was lawfully seized or detained when the officers first directed him to remain in the car and then directed him to sit on the curb. The Attorney General has conceded that this was a seizure. (See *Saunders, supra,* 38 Cal.4th at p. 1134; see also *People v. Castellon* (1999) 76 Cal.App.4th 1369, 1374 [91 Cal.Rptr.2d 204]; *Maryland v. Wilson* (1997) 519 U.S. 408 [137 L.Ed.2d 41, 117 S.Ct. 882] (*Wilson*).) The parties argue whether or not the seizure was lawful.

The Attorney General contends that the seizure was lawful because the officers had the authority, in the interests of officer safety, to order defendant first to remain in the car and then to exit it, and to sit on the curb along with all the other occupants of the car. The Attorney General argues that an officer conducting a routine traffic stop may order a passenger who attempts to exit the vehicle to remain in or near the vehicle for reasons of officer safety without violating the passenger's Fourth Amendment rights.

Defendant contends that the trial court correctly held that a police officer may not detain a passenger, who is suspected of no wrongdoing and who is engaging in no threatening behavior, during a routine traffic stop for unparticularized officer safety reasons. Defendant argues that a mere passenger in a vehicle stopped for a Vehicle Code violation cannot be detained solely for officer safety reasons, and that a reasonable suspicion that the passenger is engaged in criminal activity is required before the passenger can be detained. Defendant argues that he was unlawfully detained when the officers ordered him to return to the car without a reasonable suspicion of any wrongdoing, and he submitted to their assertion of authority.

■ Our review of the law leads us to the conclusion that the detention of defendant under the circumstances here was justified. In *Wilson*, the United States Supreme Court held that passengers may be ordered to get out of the car during a traffic stop. (*Wilson, supra,* 519 U.S. at p. 415.) In that case, an officer initiated a traffic stop because the driver was speeding and the car had no regular license tag. During the pursuit, the officer noticed that there were three occupants in the car and that the two passengers turned to look at him several times, repeatedly ducking below sight level and then reappearing. While the driver was looking for the rental papers for the car, the officer ordered the defendant, a passenger, out of the car. (*Id.* at pp. 410–411.) The United States Supreme Court held that "the rule of *Pennsylvania v. Mimms,* 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330] (1977) (*per curiam*), that a police officer may as a matter of course order the driver of a lawfully stopped

car to exit his vehicle, extends to passengers as well." (*Wilson, supra,* 519 U.S. at p. 410.) "[D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." (*Id.* at pp. 414–415, fn. omitted.)

In *Saunders, supra,* 38 Cal.4th at page 1134, the California Supreme Court cited *Wilson* in upholding "an officer's authority to order a passenger to exit a vehicle during a traffic stop as a matter of course," so long as the initial stop was lawful. In *Saunders,* the officers lawfully stopped a vehicle that was missing a front license plate. The officers discovered that the driver's license had been suspended and decided to impound the vehicle. They ordered the defendant, who was the passenger, out of the vehicle. The court held that the defendant was seized at the time the officer ordered him to step out of the vehicle, and that the seizure was lawful under *Wilson* because the underlying traffic stop was lawful. (*Saunders, supra,* 38 Cal.4th at pp. 1134–1137.)

In *People v. Castellon, supra,* 76 Cal.App.4th 1369, an officer stopped a car upon probable cause that a Vehicle Code violation had occurred. (*Id.* at p. 1373.) As the officer got out of his patrol car the defendant, a passenger in the stopped car, started to get out. The officer told the defendant not to get out of the car. The defendant got out of the car and stopped about three feet away from it. The appellate court determined that a person is seized for Fourth Amendment purposes "when the officer's words would convey to a reasonable person that he or she is being ordered to stop, and the person complies with that order. [Citation.] . . . At the point where Castellon submitted to [the officer's] authority, he was seized within the meaning of the Fourth Amendment." (76 Cal.App.4th at p. 1374.) The appellate court further determined that the officer's actions were reasonable and that the detention was justified because the officer's "concern for his safety as a police officer outweighed the minor inconvenience a brief detention imposed upon Castellon." (*Id.* at p. 1377.)

■ In *United States v. Williams* (9th Cir. 2005) 419 F.3d 1029 (*Williams*), an Oakland police officer stopped a car for a Vehicle Code violation. The defendant, who was sitting in the front passenger seat of the car, opened the passenger door and got out before the officer could approach the driver. The officer immediately ordered the defendant to get back into the car, and the defendant complied. After the driver told the officer that she did not have a license or identification, the officer asked her to step out of the vehicle and handcuffed her. While he was escorting the driver to the patrol car, the

defendant threw a gun out of the passenger window. The defendant was later charged in federal court with being a felon in possession of a firearm. (18 U.S.C. § 922(g)(1).) The district court denied the defendant's motion to suppress the recovered gun as evidence. The Court of Appeals held that an officer may order a passenger who voluntarily gets out of a lawfully stopped vehicle back into the automobile without violating the passenger's Fourth Amendment rights. "In upholding the officer's discretion to control the situation as he or she deems necessary to ensure the safety of the officer and the vehicle occupants, we answer in the affirmative the question explicitly left open by the *Wilson* Court. *Id.* at 415 n. 3, . . . (finding it unnecessary to consider whether 'an officer may forcibly detain a passenger for the entire duration of the stop'). We now hold that a passenger's compliance with an officer's command to get back into the car in which the passenger had just exited is not an unreasonable seizure under the Fourth Amendment." (*Williams, supra*, 419 F.3d at pp. 1030–1031.)

These authorities fully support the conclusion under the circumstances here that the officers were justified in ordering defendant to stay in the car, and then to get out of the car with the other occupants. The two officers in this case were dealing not only with the driver of the stopped car, but with three passengers. One of the passengers was making furtive movements in the backseat at the same time as defendant, the other passenger in the backseat, was attempting to leave the car. The third passenger in the front seat chose to remain in the car. Thus, if the officers allowed defendant to walk away, the possibility of a violent encounter could arise from two locations: one from inside the car and the other from defendant's location outside the car. The officers' attention could be distracted by the different movements of the various occupants of the car. The officers, therefore, could reasonably require defendant to stay with the other occupants of the car, either inside or outside the car, pending completion of the car stop.

■ *Wilson* held that a police officer for reasons of officer safety may, "as a matter of course," order the passengers of a lawfully stopped car to get out of the vehicle. (*Wilson, supra*, 519 U.S. at p. 410.) The court in *Wilson* reasoned that the danger to an officer was likely to be greater when there were several occupants in a stopped car. (*Id.* at pp. 414–415.) The possibility of a violent encounter is likely to be even greater still when one or more of the passengers in a stopped car attempts to leave while others stay in the car. We believe the holding in *Wilson* can therefore reasonably be interpreted to allow officers as a matter of course to order a passenger or passengers either to get out of the car or to remain in the car during a lawful traffic stop if the officers deem it necessary for officer safety. (*People v. Castellon, supra*, 76 Cal.App.4th at pp. 1374–1375; see also *Williams, supra*, 419 F.3d at p. 1034.) "[W]hether the passenger is ordered to stay in the car or [get] out of the vehicle is a distinction without a difference." (*People v. Castellon, supra*,

76 Cal.App.4th at pp. 1374–1375.) "An officer making a traffic stop may immediately take the reasonable steps he or she deems necessary to secure the officer's safety, including ordering a passenger to remain in or to get out of the vehicle, without violating the Fourth Amendment." (*Id.* at p. 1376, fn. 2.)

"Giving officers the authority to control all movement in a traffic encounter is sensibly consistent with the public interest in protecting their safety. [Citations.] Allowing a passenger, or passengers, to wander freely about while a lone officer conducts a traffic stop presents a dangerous situation by splitting the officer's attention between two or more individuals, and enabling the driver and/or the passenger(s) to take advantage of a distracted officer." (*Williams, supra,* 419 F.3d at p. 1034.) "In the final calculus, we think it best left to the discretion of the officers in the field who confront myriad circumstances we can only begin to imagine from the relative safety of our chambers. . . . [U]nder the Fourth Amendment it is reasonable for an officer to order a passenger back into an automobile that he voluntarily exited because the concerns for officer safety originally announced in *Wilson,* and specifically the need for officers to exercise control over individuals encountered during a traffic stop, outweigh the marginal intrusion on the passenger's liberty interest." (*Williams, supra,* 419 F.3d at p. 1034.)

We conclude that the officers in this case, after lawfully stopping the Cadillac, were justified in ordering defendant back in the car and then ordering all the passengers to get out of the car and to sit on the curb for officer safety reasons.

The trial court in the case before us relied on *Gonzalez, supra,* 7 Cal.App.4th 381, which was decided in 1992, prior to the development of the law in this area in decisions such as *Wilson, Saunders, Castellon,* and *Williams. Gonzalez* is also factually distinguishable. In that case, two officers stopped a car because the driver changed lanes rapidly without signaling. As an officer approached the stopped car, the defendant, who was the only passenger, started to get out of the car. One officer ordered him to get back in the car, for officer safety reasons. Based on existing law, the court in *Gonzalez* held that the defendant was detained when the officer told him to get back in the car, and further concluded that the detention was unlawful in the absence of "a reasonable, articulable suspicion of criminal activity." (*Gonzalez, supra,* 7 Cal.App.4th at p. 386.) As we have discussed herein, current law supports the conclusion that police officers conducting a car stop may, for purposes of officer safety, order the occupants either to get out of the

car or to stay in the car. Here, there were four people in the car when the Cadillac was lawfully stopped. One person in the backseat was reaching for something in the waistband area underneath her clothing. Another person was simultaneously getting out of the car. The third passenger was remaining in the front seat. As the court in *Wilson* emphasized, "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." (*Wilson, supra,* 519 U.S. at pp. 414–415.) Under these circumstances, the officer was justified in attempting to keep all of the passengers within sight for officer safety reasons.

■ We turn next to the question whether the officer was justified in asking defendant for identification while he was lawfully detained during the traffic stop. " '[I]nvestigative activities beyond the original purpose of a traffic stop, including warrant checks, are permissible as long as they do not prolong the stop beyond the time it would otherwise take. [Citations.]' [Citation.]" (*People v. Gallardo* (2005) 130 Cal.App.4th 234, 238 [29 Cal.Rptr.3d 455].) There was no indication here that the traffic stop was unreasonably prolonged at the time Officer Fonua asked defendant for identification, as the officers had not yet stabilized the scene or even begun investigating the reason for the traffic stop. It is well established that "[a]n officer has every right to talk to anyone he encounters while regularly performing his duties . . . ." (*People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227 [42 Cal.Rptr.2d 18].)

As a general proposition, "[a]sking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." (*Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.* (2004) 542 U.S. 177, 185 [159 L.Ed.2d 292, 124 S.Ct. 2451].) The United States Supreme Court has repeatedly held in various contexts that "mere police questioning does not constitute a seizure." (*Florida v. Bostick* (1991) 501 U.S. 429, 434 [115 L.Ed.2d 389, 111 S.Ct. 2382] [questioning of occupants of a bus]; see *INS v. Delgado* (1984) 466 U.S. 210, 212 [80 L.Ed.2d 247, 104 S.Ct. 1758] [asking workers in a factory for identification].) By the same token, asking a person who is lawfully detained for identification does not constitute an independent violation of the Fourth Amendment. "Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops. [Citations.]" (*Hiibel, supra,* 542 U.S. at p. 186 [upholding a state "stop and identify" statute requiring an individual who is detained pursuant to a *Terry* stop to disclose his or her identity].)

The United States Supreme Court recently applied these general principles in *Muehler v. Mena* (2005) 544 U.S. 93 [161 L.Ed.2d 299, 125 S.Ct. 1465].

In that case, while conducting a lawful warrant-authorized search of a house, police detained four occupants of the house in handcuffs, in part to minimize the risk of harm to officers. The court found that the detention was reasonable under the circumstances, and further found that asking one of the detained individuals for identification while she was lawfully detained did not violate her Fourth Amendment rights. Because the questioning did not prolong the detention, "there was no additional seizure within the meaning of the Fourth Amendment. Hence, the officers did not need reasonable suspicion to ask Mena for her name, date and place of birth, or immigration status." (544 U.S. at p. 101.)

■■■ "[I]t is quite clear police do not need to have a reasonable suspicion in order to ask questions or request identification." (*People v. Lopez* (1989) 212 Cal.App.3d 289, 291 [260 Cal.Rptr. 641].) "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." (*INS v. Delgado, supra*, 466 U.S. 210, 216.) We see no reason not to apply these rules to a passenger who has been detained during a lawful car stop. In *People v. Grant* (1990) 217 Cal.App.3d 1451 [266 Cal.Rptr. 587], the court held that asking a passenger detained in a car stop for identification "was not unreasonable under the circumstances and did not amount to a separate 'detention' requiring separate justification." (*Id.* at p. 1462, distinguishing *People v. Spicer* (1984) 157 Cal.App.3d 213, 220 [203 Cal.Rptr. 599] where the court had found "circumstances pregnant with coercion.") We note that the analysis in *People v. Grant* proceeded from the premise that the passenger was detained when the car was lawfully stopped, whereas in our case, based on the Attorney General's concession, we focus on the detention that occurred when the passenger was ordered to remain in the car and then get out of the car and sit on the curb. Here, for purposes of officer safety in carrying out a valid car stop, defendant was ordered to stay with the other passengers. Because this constituted a lawful detention, the officer's request for identification did not amount to "a separate 'detention' requiring separate justification." (*People v. Grant, supra*, 217 Cal.App.3d at p. 1462.) The request for identification did not prolong the detention and there was no "additional seizure within the meaning of the Fourth Amendment." (*Muehler v. Mena, supra*, 544 U.S. at p. 101.)

We conclude that the trial court erred in granting defendant's motion to suppress and in ordering dismissal of the charges against defendant.

## DISPOSITION

The October 21, 2005 dismissal order is reversed. The matter is remanded to the superior court with directions to deny defendant's motion to suppress evidence.

Mihara, J., and McAdams, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 2007, S154063.