Filed 7/8/13  P. v. Gonzalez CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038070 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1114392) |
| v. | |
| TONY ADAM GONZALEZ, | |
| Defendant and Appellant. | |

After the trial court denied his motion to suppress (Pen. Code, § 1538.5)[1], defendant Tony Adam Gonzalez pleaded no contest to possession of a firearm by a felon (former § 12021, subd. (a)(1)) and admitted having served three prior prison terms (§ 667.5, subd. (b)).  The trial court struck the prior prison term allegations and sentenced defendant to a 16-month prison term.

On appeal, defendant contends:  (1) the trial court erred by denying his motion to suppress; (2) trial counsel was ineffective for failing to argue meritorious grounds for the motion to suppress; and (3) the trial court erred by imposing a booking fee pursuant to Government Code section 29550.1 without finding that he had the ability to pay.

We will affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# BACKGROUND

## A. Evidence Presented at the Motion to Suppress

At 6:08 p.m. on August 28, 2011, San Jose Police Officer Allan delaCruz was on patrol in an area of San Jose known to be a gang neighborhood.

Defendant was standing next to a red car. Officer delaCruz pulled up next to defendant, rolled down his window, and asked if defendant knew about a recent homicide. Officer delaCruz noticed that defendant had four dots tattooed on his hand; he knew that this was a symbol of the Norteño gang. He also noticed that defendant wore his hair in a ponytail and that defendant was dirty and unkempt.

Officer delaCruz got out of his car to speak further with defendant. He parked his car within 10 feet of defendant but did not block defendant with the car. Officer delaCruz did not draw a weapon or shine a flashlight on defendant, and he walked slowly. He asked defendant "what he was up to." Defendant replied that he was getting water for his dog.

Officer delaCruz asked defendant "if he had any ID." Defendant said he did, then walked around to the passenger side of the car. He opened the passenger door and began reaching into the car. Officer delaCruz told defendant he did not need to get his wallet, saying "come out of the car." Officer delaCruz was concerned that defendant could be "reach[ing] for a weapon."

Defendant ignored the officer and continued reaching into the car with his right hand. His left hand began to move toward his waistband area, where it is common for people to conceal weapons. Officer delaCruz again told defendant to "come out of the car." He began to walk toward defendant, and he repeated the same command "several more times."

As Officer delaCruz got closer, defendant came out of the car and walked toward the rear of the car. Defendant again reached toward his waistband. Officer delaCruz yelled for defendant to "stop reaching for the waistband," but defendant continued to do

2

so. Defendant also turned around and bent down, reaching for a spare tire that was on the ground. At that point, Officer delaCruz grabbed defendant's arm and walked him toward the patrol car. He asked what defendant was reaching for. Defendant said a "toy gun." Officer delaCruz lifted defendant's shirt and found a loaded revolver. Defendant had a box of .38-caliber ammunition on his person.

A computer assisted dispatch (CAD) report documenting the communication between Officer delaCruz and dispatch showed that Officer delaCruz first contacted dispatch at 6:08 p.m. At that time, he informed dispatch of his location and said he was making a pedestrian stop. According to Officer delaCruz, this call was made after he had already handcuffed defendant. He called again to run defendant's identification at 6:09 p.m., one minute and 37 seconds after the first call.

### B.    Charges, Plea, and Sentencing

Defendant was charged, by information, with possession of a firearm by a felon (former § 12021, subd. (a)(1)), possession of ammunition by a prohibited person (former § 12316, subd. (b)(1)), carrying a loaded firearm by a felon (former § 12031, subd. (a)(1)), and carrying a concealed firearm by a felon (former § 12025, subd. (a)(2)). The information alleged that defendant had served three prior prison terms. (§ 667.5, subd. (b).)

After his motion to suppress was denied, defendant pleaded no contest to possession of a firearm by a felon (former § 12021, subd. (a)(1)) and admitted having served three prior prison terms (§ 667.5, subd. (b)). The remaining counts were dismissed.

At the sentencing hearing, the trial court imposed the low term of 16 months and struck the prior prison term allegations. It imposed various fees and fines, including a $129.75 criminal justice administration fee.[2]  (Gov. Code, § 29550.1.)

## DISCUSSION

### A.      *Denial of Motion to Suppress*

Defendant contends the trial court erred by denying his motion to suppress. He contends that he was detained when Officer delaCruz first ordered him to "come out of the car." Alternatively, defendant asserts that he was detained when he came out of the car in response to the officer's repeated orders. In either case, he contends his detention was not reasonable under the Fourth Amendment because there were no "specific articulable facts that, considered in light of the totality of the circumstances, provide[d] some objective manifestation that [defendant might] be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)  To the extent trial counsel did not make these specific arguments below, defendant contends he received ineffective assistance of counsel.

### 1.      Proceedings Below

Defendant's written motion to suppress contained a summary of the facts, an allegation that he was searched without a warrant, and an assertion that it was the prosecution's burden to justify the warrantless search. (See *People v. Williams* (1999) 20 Cal.4th 119, 130 ["when the basis of a motion to suppress is a warrantless search or seizure, the requisite specificity is generally satisfied, *in the first instance*, if defendants simply assert the absence of a warrant and make a prima facie showing to support that assertion"].)

---

[2] The criminal justice administration fee is also known as a "booking fee." (See *People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1399.)  We will use both terms interchangeably.

In her written opposition, the prosecutor argued that Officer delaCruz's initial contact with defendant was consensual. She argued that the encounter did not become a detention when the officer began telling defendant to step out of the car, because defendant did not actually submit to the officer's assertion of authority. (See *California v. Hodari D.* (1991) 499 U.S. 621, 628 (*Hodari D.*).) The prosecutor argued that defendant was detained when the officer "took control of his arms," and that there was reasonable suspicion for a weapons search of defendant's person at that point.

At the hearing on the motion to suppress, defendant argued that Officer delaCruz's account of the events did not "make sense." Trial counsel asserted that Officer delaCruz must have made the first call to dispatch before approaching defendant. He argued that the entire event could not have occurred within the short amount of time between the two calls to dispatch.

The prosecutor argued that the incident could have occurred in less than a minute and a half. She argued that there was reasonable suspicion to search defendant because of his furtive movements, gang tattoo, and the fact that he was in a high crime area.

The trial court noted that defendant's argument depended on discounting the officer's testimony, and it found there was no reason to do so. The trial court found that the incident could have occurred within a short amount of time, and that Officer delaCruz had "a very good reason to have concerns for his safety" when defendant reached into the car. The trial court further found that "any reasonable police officer would have had a suspicion that criminal activity was afoot the moment the defendant refused to stop reaching into the car, and then walked around the back of the car."

### 2. Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the

5

applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

### 3. Analysis

"The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures of persons, including unreasonable investigative stops. [Citations.] With respect to seizures, '[a] seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.' [Citations.]" (*People v. Vibanco* (2007) 151 Cal.App.4th 1, 8 (*Vibanco*).) Before an officer can detain someone, there must be reasonable suspicion to believe that the person is engaged in criminal activity. "[T]he temporary detention of a person for the purpose of investigating possible criminal activity may, because it is less intrusive than an arrest, be based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity. [Citations.]" (*Souza, supra,* 9 Cal.4th at p. 230.)

The first question in this case is *when* defendant was detained for purposes of the Fourth Amendment. Defendant does not dispute that he was not detained when Officer delaCruz initially spoke to him and asked "if he had any ID." (See *Vibanco, supra,* 151 Cal.App.4th at p. 13 [a police officer can " 'talk to anyone he encounters while regularly performing his duties' " and can " 'ask a person for identification without implicating the Fourth Amendment' "].)

Defendant asserts that he was detained when Officer delaCruz first ordered him to come out of the car. He asserts that a reasonable person "would *not* have felt as if he or she was 'free to leave,' " rendering the encounter a detention.

In *Hodari D.*, the United States Supreme Court clarified that a detention does not necessarily occur when, due to a show of authority by police, " 'a reasonable person would have believed that he was not free to leave.' " (*Hodari D., supra,* 499 U.S. at p. 628, quoting *United States v. Mendenhall* (1980) 446 U.S. 544, 554.) The Court

6

explained that this test "states a *necessary,* but not a *sufficient,* condition for seizure." (*Ibid*.)  If "the subject does not yield" to the officer's show of authority, no seizure occurs.  (*Id.* at p. 626; see also *Terry v. Ohio* (1968) 392 U.S. 1, 20, fn. 16 ["Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."]; *U.S. v. Baldwin* (2d Cir. 2007) 496 F.3d 215, 218 ["We have understood the import of *Hodari D.* to be that 'an order to stop must be obeyed or enforced physically to constitute a seizure.' "].)

Based on the principles stated in *Hodari D.,* we disagree with defendant's claim that he was detained when Officer delaCruz first ordered him to come out of the car. Even if a reasonable person would not have felt as if he or she was free to leave, the encounter was not a detention at that point because defendant did not actually "yield" to the officer's "show of authority."  (*Hodari D., supra,* 499 U.S. at p. 626.)  Instead, defendant ignored the officer's directive and continued reaching into the car.  (See *People v. Johnson* (1991) 231 Cal.App.3d 1, 10 [defendant was not detained when he ignored officer's command to " ' "Come down towards me," ' " even if reasonable person would have felt he or she was not free to leave].)

Alternatively, defendant claims that he came out of the car in response to the officer's repeated orders and that he was detained at that point.  Defendant acknowledges that he then walked away from the officer but contends that he was still complying with the officer's command, since the officer did not specify where he was to go other than "out of the car."

The Attorney General argues that defendant was not actually detained until Officer delaCruz grabbed his arm, because defendant did not comply with the officer's further commands and thus never submitted to the officer's "show of authority."  (See *Hodari D., supra,* 499 U.S. at p. 626.)

We agree with the Attorney General that defendant was not detained until Officer delaCruz applied physical force to effect the seizure.  Although defendant did eventually

7

"come out of the car," the record does not support defendant's claim that he necessarily did so in submission to the officer's show of authority. Rather, the record supports a finding that defendant moved out of the car in response to the officer's approach. As Officer delaCruz testified, defendant did not respond to his repeated commands until the officer got close to him: "At that point he did come out of the car and started walking towards the rear of the vehicle." Importantly, as he walked away, defendant continued to ignore the officer's further command to "stop reaching for the waistband." Thus, defendant never actually "yield[ed]" to the officer's "show of authority" (*Hodari D., supra,* 499 U.S. at p. 626) and was not detained until Officer delaCruz grabbed his arm.

As the trial court found, reasonable suspicion supported the detention and pat-search for weapons at the time Officer delaCruz grabbed defendant's arm. Based on defendant's behavior in refusing to come out of the car and reaching toward his waistband, together with the fact that defendant had a gang tattoo and was in a known gang area where a recent homicide had occurred, a reasonable officer would have suspected that defendant might be armed. (See *In re H.M.* (2008) 167 Cal.App.4th 136, 146 ["Officers in an area plagued by violent gang activity need not ignore the reality that persons who commit crimes there are likely to be armed."]; *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1241 [detention and pat-down lawful where defendant was in a gang neighborhood at night and reached back into his pockets after being ordered to show his hands].)

We conclude the trial court did not err by denying defendant's motion to suppress. Further, since we have found no merit to defendant's arguments, we conclude that trial counsel was not ineffective for failing to make those arguments below.

### B.    *Booking Fee*

As noted above, the trial court imposed a $129.75 criminal justice administration fee at sentencing pursuant to Government Code section 29550.1. Defendant contends that although this section does not expressly require the trial court to find a defendant has

the ability to pay the fee before ordering payment, the equal protection provisions of the state and federal Constitutions require the section to be interpreted as including an ability-to-pay requirement. Defendant further contends that the court below did not make an inquiry into his ability to pay, and that there was no evidence to support a finding that he had an ability to pay. Although he did not object to the fee below, defendant argues that his appellate claim for insufficiency of the evidence has not been forfeited. Alternatively, defendant contends that trial counsel was ineffective for failing to object. He also contends the issue is cognizable because it involves a pure question of law.

The Attorney General contends that defendant has forfeited his claim of insufficiency of the evidence concerning the ability to pay. The Attorney General further argues that the trial court made an implied finding that defendant had the ability to pay the fee, and that principles of equal protection do not require us to interpret Government Code section 29550.1 as including an ability-to-pay provision.

The California Supreme Court recently held that, by failing to object below, a defendant forfeits an appellate claim that he or she lacks the ability to pay a booking fee imposed pursuant to Government Code section 29550.2. (*People v. McCullough* (2013) 56 Cal.4th 589.) In this case, defendant's challenge to the booking fee raises the initial question of whether equal protection principles require Government Code section 29550.1 to be interpreted as including an ability-to-pay requirement. The forfeiture doctrine has been applied to unpreserved equal protection claims. (See, e.g., *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14.) However, an appellate court may reach the merits of a constitutional claim when it is " 'one of law presented by undisputed facts in the record . . . that does not require the scrutiny of individual circumstances, but instead requires the review of abstract and generalized legal concepts. . . .' " (*People v. Delacy* (2011) 192 Cal.App.4th 1481, 1493; see *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1323; *In re Sheena K.* (2007) 40 Cal.4th 875, 887-888 & fn. 7.)

Assuming, without deciding, that defendant may challenge the criminal justice administration fee for the first time on appeal, we determine that the trial court was not required under equal protection principles to consider defendant's ability to pay. Government Code sections 29550, 29550.1, and 29550.2 authorize the imposition of a criminal justice administration fee on an arrestee who is ultimately convicted, in order to cover the expenses involved in booking or otherwise processing the arrestee in a county jail. Government Code sections 29550 and 29550.2 expressly require a finding that the person has the ability to pay the fee when the fee is imposed under certain circumstances. (See Gov. Code, §§ 29550, subd. (d)(2), 29550.2, subd. (a).) Government Code section 29550.1, the statute which authorizes imposition of the fee on defendant in this case, does not contain an express ability-to-pay requirement. According to defendant, the absence of an ability-to-pay requirement in Government Code section 29550.1 violates his state and federal rights to equal protection.

To prevail on an equal protection claim, a defendant must first establish that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Brown* (2012) 54 Cal.4th 314, 328; *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 (*Hofsheier*).) Unless the statutory distinction at issue involves a suspect classification, touches upon a fundamental interest, or is based on gender, most equal protection challenges are analyzed under the rational relationship test. (*Hofsheier, supra,* at p. 1200.) Defendant in this case asserts that the statutory scheme fails the rational relationship test. Under this test, " ' " 'a statutory classification . . . must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are "plausible reasons" for [the classification], "our inquiry is at an end." ' " ' [Citations.]" (*Id.* at pp. 1200-1201, italics omitted.)

Arguably, persons subject to Government Code section 29550.1 and those subject to Government Code sections 29550 and 29550.2 are not similarly situated. Counties

10

typically operate the jails and bear the expense of providing for persons held there. (Gov. Code, § 29602, §§ 4000, 4015; *City of San Jose v. State of California* (1996) 45 Cal.App.4th 1802, 1813-1814.) Under Government Code section 29550, subdivision (c), a county may recover its "actual administrative costs" directly from the arrested person if the person was arrested by county personnel. The county may also recover its actual costs directly from the arrested person when the arrest was made by a governmental entity not specified in Government Code sections 29550 or 29550.1, which would include state law enforcement agencies. (Gov. Code, § 29550.2, subd. (a).) But where the arrest was made by a "city, special district, school district, community college district, college, or university," the county may impose a fee on that local arresting entity for no more than "one-half" of the county's "actual administrative costs." (Gov. Code, § 29550, subd. (a)(1).) Under Government Code section 29550.1, the local arresting entity may, in turn, recover from the arrested person the fee "imposed by a county." (Gov. Code, § 29550.1.) Thus, someone like defendant, who was arrested by a local entity such as San Jose police, is liable for one-half the amount for which county or state arrestees are liable. Therefore, arguably, the local arrestee and the county and state arrestees are not similarly situated.

Even if these classes of arrestees were similarly situated for purposes of the law, there is a conceivable rational basis for the differential treatment. Although a person arrested by a local entity will be required to pay a criminal justice administration fee even absent an ability-to-pay finding, and other arrestees will not have to pay the fee if they do not have the ability, the local arrestee has the benefit of being charged one-half the amount that other arrestees are charged. The Legislature could rationally have concluded that imposing an ability-to-pay condition in cases of county and state arrestees but omitting it as to local arrestees was reasonable because the former are exposed to a potential debt two times the size of that the latter will have to pay. This is a plausible basis for the differential treatment.

11

Accordingly, we conclude that equal protection principles did not require the trial court to determine defendant's ability to pay before imposing a criminal justice administration fee payable to the City of San Jose. (See Gov. Code, § 29550.1; *Hofsheier, supra,* 37 Cal.4th at pp. 1199, 1200-1201.) In view of our conclusion, we do not reach defendant's contentions concerning the court's failure to make an inquiry concerning his ability to pay and the purported lack of evidence of his ability to pay.

## DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.