Filed 4/11/14  P. v. Jones CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TANGIE L. JONES,<br><br>    Defendant and Appellant. | B252035<br><br>(Los Angeles County<br>Super. Ct. No. BA411603) |

THE COURT:[*]

Defendant Tangie L. Jones appeals from the denial of her motion to suppress evidence under Penal Code section 1538.5.[1]  Upon denial of her motion, defendant agreed to enter into a plea bargain in which she pleaded "no contest" to possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a) as a felony (count 1).  For housing purposes only, she admitted a 2005 conviction for carjacking, a violation of section 215, subdivision (a), as a strike conviction.  Defendant

---

[*]    BOREN, P.J ., CHAVEZ, J., FERNS, J.†

†    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]    All further references to statutes are to the Penal Code unless stated otherwise.

admitted having suffered a prison sentence for a 2012 conviction of grand theft from a person in violation of section 487, subdivision (c) within the meaning of section 667.5, subdivision (b). Defendant agreed there was a factual basis for her plea.

Defendant agreed to a suspended sentence of four years consisting of the high term of three years in state prison with a consecutive one-year term under section 667.5, subdivision (b). After suspending execution of the sentence, the trial court placed defendant on formal probation for three years under terms and conditions, which included serving 365 days in county jail and a one-year residential treatment program. The court granted credits for 109 actual days and 109 conduct credits for a total of 218 days of credit. The People moved to dismiss the remaining charges and allegations under section 1385.[2]

We appointed counsel to represent defendant on this appeal. On December 18, 2013, counsel filed an "Opening Brief" in which he stated that he had failed to find any arguable issues. On December 18, 2013, we informed defendant that she had 30 days in which to file a supplemental brief containing any issues she wished this court to consider.

On January 15, 2014, defendant filed a supplemental brief in which she argues the following grounds for appealing her motion to suppress: (1) the search conducted by Officer Rosas was unreasonable and illegal where the officer removed clothing to retrieve drugs while defendant was in handcuffs and seated in the back of a patrol car; (2) defendant's Fourth Amendment rights were violated because she had very limited search conditions under section 3453, subdivision (f), which governs Post-Release Community Supervision (PRCS), i.e., she could not be searched without reasonable suspicion and probable cause, and "the seizure requirement does not apply"; (3) the officers gave false information in the police report and during the suppression hearing; and (4) neither officer read defendant her rights under *Miranda v. Arizona* (1966) 384

---

[2]    In count 2, the information charged defendant with the misdemeanor offense of possession of a smoking device in violation of Health and Safety Code section 11364.1, subdivision (a)(1).

2

U.S. 436 (*Miranda*) after she was detained and placed in custody, thus violating her Fifth Amendment rights.

Defendant asks for one of three forms of relief in her supplemental brief: (1) that all evidence be suppressed and her conviction reversed; (2) that her conviction be reversed with directions to grant her a new suppression hearing at which Officer Rosas will testify; or (3) that the judgment be modified to strike the four-year suspended sentence.

## I. Suppression Hearing

At the suppression hearing, Deputy Sergio Lopez of the Los Angeles County Sheriff's Department testified that at approximately 12:58 a.m. on May 21, 2013, he was on patrol with Deputy Rosas. They were notified of the activation of a burglary alarm at a T-Mobile store on Whittier Boulevard. According to protocol, they checked the perimeter of the location. While checking the alley at the rear of the store, the deputies saw two individuals, a male and defendant. Deputy Lopez had had previous contact with defendant. Deputy Lopez made contact with the male, who told the deputy spontaneously that he was not doing anything wrong but was on parole for robbery. Deputy Rosas, who is female, contacted defendant.

Because the male had search conditions based on his parole status, Deputy Lopez searched him. Deputy Lopez verified that he was on parole. According to Deputy Lopez, Deputy Rosas searched defendant because, based on a previous contact, they were aware she was on probation. Deputy Lopez testified, "we ran both of them through our MDC."[3]

The trial court asked Deputy Lopez if he had ascertained if there were search and seizure conditions attached to defendant's probation. The deputy answered, "Yes. And like I mentioned earlier, we had previous contact with the defendant, so we were aware of her status." The court asked, "Well, did you confirm that she had search and seizure conditions as a condition of her probation?" Deputy Lopez said he could not say that he

---

**3**    Deputy Lopez stated that MDC was an acronym for the mobile digital computer.

did because he did not "run her." Deputy Rosas did. Deputy Lopez did not recall Deputy Rosas saying anything about what she found out.

Defendant, who represented herself, asked Deputy Lopez to state the probable cause for stopping her and her companion. Deputy Lopez replied that it began as a consensual encounter. Because it was late and the location was in close proximity to the possible burglary call, the deputies stopped defendant and her companion to ascertain what they were doing in the alley at that hour. Deputy Lopez acknowledged he did not ask defendant and her companion any questions related to the burglary alarm. He did ask, however, what their reason was for being in the alley. He said the male's admission of being on parole gave him probable cause to do a detention and search of his person.

Deputy Lopez acknowledged he did not observe any exchange or concealing of items or any other signs of criminal activity, and he was not there to conduct a drug investigation. He did not declare to defendant and her companion that the stop was a probation or parole check. When asked if he believed at any point that the suspect was armed and dangerous, the deputy stated he assumed anyone "at those hours in a high-infested area where drug trafficking takes place and it's gang infested that such persons could be armed and dangerous, yes." Deputy Lopez acknowledged he did not read defendant her *Miranda* rights, and he was not aware if Deputy Rosas did so. He said he was not aware defendant was on probation for a violation of section 487, grand theft, rather than for a violation of Health and Safety Code section 11350. On redirect, Deputy Lopez testified the alley was a narcotics and gang area.

At argument, the prosecutor stated the deputies had every right to be in the alley because they were responding to a burglary call. Any good deputy sheriff would stop anyone in the alley at that late hour. Upon doing so, they found out the male was on parole. They found out defendant was on probation, and they verified it by means of their computer. They were then entitled to search both persons. The search revealed evidence leading to defendant's charges.

Defendant argued that, without more, an officer's awareness of a crime or burglary alarm in the vicinity does not create a reasonable suspicion that someone who happened

4

to be in the area a short time later was the perpetrator. Prior contacts with the same deputies was a sign of harassment. When she was seized, the officers had no articulable facts or reasonable suspicion regarding any unlawful activity. She was merely standing in the alley, and it was her right to enjoy the use of public streets without harassment from cops who knew her before. Their hunch was insufficient to seize or detain her. It was not a consensual encounter -- rather, it was a seizure or detention.

Defendant added that she had issues with the search conducted by Deputy Rosas, but the deputy was not at the hearing, and she could not address them. She said the deputy removed a piece of clothing to retrieve the contraband. The court stated it had not heard any evidence about that, and it could rely only on the testimony presented.

The court ruled the officers had a right to be in the alley and to speak with defendant. When they determined she was on probation, they had a right to search her. Defendant's probation status was uncontradicted. Therefore, the officers had probable cause, and there were no grounds to suppress the evidence. Defendant agreed the drugs were found on her person.

## II. Analysis

Like the trial court, our review is limited by the record before us. Defendant represented herself at the suppression hearing. She did not subpoena Deputy Rosas, and she did not take the stand herself. The prosecutor stated she had subpoenaed both deputies, but she was aware that one of them was not available on the day the hearing took place. That deputy was clearly Deputy Rosas. The prosecutor was free to choose to proceed with only Deputy Lopez.

Although the trial court appeared to be amenable to granting a continuance, defendant did not request one. Before Deputy Lopez testified, the court asked defendant if she had any issues she wished to bring up, and defendant said she was "just waiting for the hearing so I can testify and get this over with." The trial court asked defendant if she had any witnesses, and she replied she did not.

"As the finder of fact in a proceeding to suppress evidence [citation ], the superior court is vested with the power to judge the credibility of the witnesses, resolve any

5

conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable. [Citation.] Accordingly, in reviewing the instant suppression order, we consider the record in the light most favorable to [the prevailing party] since 'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' [Citation.] But while we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, we exercise our independent judgment in determining the legality of a search on the facts so found. [Citations.]" (*People v. Woods* (1999) 21 Cal.4th 668, 673-674.)

The record shows that the deputies encountered defendant and her companion in an alley behind a building where a burglar alarm had sounded. The deputies followed their protocol in searching the perimeter of the building. It was almost 1:00 a.m., and the area was known as a high crime area. The deputies could reasonably stop the two persons in the alley briefly to ask them what they were doing there. "'[I]t is quite clear police do not need to have a reasonable suspicion in order to ask questions or request identification.'" (*People v. Vibanco* (2007) 151 Cal.App.4th 1, 14; see also *Florida v. Bostick* (1991) 501 U.S. 429, 434-435; *In re Manuel G.* (1997) 16 Cal.4th 805, 821.) Thus, Deputy Lopez was not incorrect in labeling the encounter a consensual one. Defendant's companion said without prompting that he was on parole, and the deputies knew defendant was on probation. There was no evidence at the hearing that contradicted Deputy Lopez's claim that the status of both persons was verified in the MDC.

Given defendant's search condition, there was no violation of her Fourth Amendment rights. Section 3453 describes the conditions included in postrelease community supervision. Subdivision (f) of that section provides that "[t]he person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer."

6

Defendant argues she had no "seizure requirement" in her PRCS search condition. The record shows, however, that defendant was not taken into custody, or "seized," until the contraband was found upon her person. The suppression hearing went no further than determining whether the search of defendant was lawful. Defendant's complaints about the circumstances surrounding the search of her person -- whether she was in handcuffs, whether she was subjected to a strip search, whether she was searched inside a patrol car -- were not before the trial court. Moreover, we note that the statute establishing a statewide policy for strip searches, from which defendant quotes extensively, applies "only to prearraignment detainees arrested for infraction or misdemeanor offenses and to any minor detained prior to a detention hearing" when the minor is alleged to have committed a misdemeanor or infraction. (§ 4030, subd. (b).)

As for defendant's complaint that she was not read her *Miranda* rights, there was no statement by defendant at issue in the hearing below. Defendant asked Deputy Lopez if he or Deputy Rosas gave defendant her *Miranda* warnings. Deputy Lopez did not, and he did not know if Deputy Rosas did. The questioning on this subject ended there. Thus, there is no issue to be decided regarding any statements allegedly made by defendant in violation of *Miranda*.

We have examined the entire record. We are satisfied that defendant's attorney has fully complied with his responsibilities and no arguable issues exist. (*People v. Wende* (1979) 25 Cal.3d 436.

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.