Filed 6/17/14  P. v. Zapien CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ZAPIEN,<br><br>    Defendant and Appellant. | H039878<br>(Santa Clara County<br>Super. Ct. No. C1349201) |

## I.    INTRODUCTION

Defendant Jose Zapien[1] appeals after pleading no contest to carrying a concealed, loaded, unregistered firearm in public (Pen. Code, § 25850, subd. (a)[2]) and admitting that he committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)).  He was placed on probation for three years.

On appeal, defendant contends the trial court erred by denying his motion to suppress evidence (see § 1538.5) and by imposing certain probation conditions.  We will modify the probation conditions and affirm the judgment as modified.

---

[1] Below, defendant was referred to as Jose Zapien Mendoza.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

## II.    BACKGROUND

### A.    *The Vehicle Stop*

On January 28, 2013, San Jose Police Officers Jodi Williams and Phuong Nguyen were on patrol. At about 8:39 p.m., the officers saw a vehicle roll through a stop sign. The officers followed the vehicle and saw it roll through a second stop sign.

The officers caught up to the vehicle "as it was pulling into a [residential] driveway." They "initiated a vehicle stop" by turning on the red lights of their unmarked patrol car, and by using the patrol car siren to make a "chirp." The stop happened "simultaneously" with the vehicle pulling into the driveway. As the officers were pulling up behind the vehicle, it was "coming to a stop."

After the vehicle stopped in the driveway, Officer Williams contacted the driver, who was defendant's sister. Defendant, who was the passenger, exited and stood in the open doorway area of the vehicle. He looked to the north, east, and south. Officer Nguyen thought defendant was "planning on running," so he approached defendant. Officer Nguyen wanted to get closer to defendant in case of a pursuit, which "happens a lot."

Officer Nguyen took hold of defendant's arm and walked defendant towards the police car. He did so for "safety" reasons, explaining, "We don't want people to be near their car, especially if they've shown any kind of furtive actions or movements," since the car could hold weapons or evidence.

While walking defendant to the patrol car, Officer Nguyen asked if defendant had any weapons. Defendant "didn't really answer." He hesitated and said, "Ummm." At that point, Officer Nguyen turned defendant around and clasped defendant's hands together behind his back. Officer Nguyen again asked if defendant had any weapons. This time, defendant replied that he had a gun. Officer Nguyen handcuffed defendant and retrieved a loaded gun from defendant's waistline.

2

The officers later learned that defendant's parents lived at the residence. The officers also determined that defendant had an outstanding arrest warrant.

**B.      *Charges, Suppression Motion, and Plea***

Defendant was charged with five firearms offenses, and the information alleged that each crime was committed for the benefit of a criminal street gang. (§ 186.22, subds. (b)(1)(A) & (d).)

Defendant filed a motion to suppress. (See § 1538.5.) After the motion was denied, defendant pleaded no contest to count 3 of the information, which charged him with carrying a concealed, loaded, unregistered firearm in public. (§ 25850, subd. (a).) Defendant admitted that he committed the offense for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1)(A).)

**C.      *Sentencing***

At the sentencing hearing, defendant was placed on probation for three years. The trial court orally imposed a number of probation conditions, including a condition prohibiting defendant from possessing, wearing, or displaying any gang-related tattoo and a condition requiring defendant to provide passwords to his electronic devices and social media sites. Although not orally imposed, the written probation conditions also included a condition prohibiting defendant from possessing a pager or other portable communication equipment.

### III.   DISCUSSION

**A.      *Motion to Suppress***

Defendant contends the trial court erred by denying his motion to suppress. He contends the vehicle in which he was riding stopped because it had reached its destination and not because of the officers' show of authority. Defendant contends he therefore was not detained by a traffic stop, but by Officer Nguyen exercising physical control over him, and that the detention was not justified by any reasonable suspicion of criminal activity.

3

### 1. Proceedings Below

In its written order denying defendant's motion to suppress, the trial court found that the initial detention was valid because of the Vehicle Code violation. The court made a factual finding that "[s]hortly after the police car activated its emergency lights and briefly turned on its siren, the car in which defendant was a passenger turned into a residential driveway and stopped." The court found that defendant was "detained as a passenger of a lawfully stopped car" and that it was reasonable for the police to move him away from the vehicle because of "officer safety concerns." The court explained, "A passenger getting out of the car increases the risk of confrontation with the officer as well as the risk of flight. The defendant also remained close to the stopped vehicle and therefore still had access to any potential weapon concealed in the vehicle."

### 2. Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

### 3. Analysis

Defendant contends the officers never seized the vehicle in which he was riding. He claims the vehicle stopped because it had reached its destination and not because of the officers' show of authority. Thus, defendant argues, the police could only detain him if they had reasonable suspicion to believe that he was armed or involved in criminal activity.

"The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures of persons, including unreasonable investigative stops. [Citations.] With respect to seizures, '[a] seizure occurs whenever a police officer "by means of

4

physical force or show of authority" restrains the liberty of a person to walk away.' [Citations.]" (*People v. Vibanco* (2007) 151 Cal.App.4th 1, 8.)

A typical traffic stop necessarily effectuates not only a seizure of the driver, but of any passengers, as well. (See *Brendlin v. California* (2007) 551 U.S. 249, 257 (*Brendlin*) ["A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver . . . ."].) Generally, in situations other than a lawful traffic stop, a person may be detained only if the police have "suspicion (reasonably grounded, but short of probable cause) that criminal activity is afoot." (*Arizona v. Johnson* (2009) 555 U.S. 323, 330 (*Johnson*); see *Terry v. Ohio* (1968) 392 U.S. 1, 24.)

According to defendant, the evidence presented at the motion to suppress established that "[t]he car in which [he] was a passenger stopped because it had reached its destination, not as a result of any action on the part of the officers." Defendant contends that since he was not detained as a result of a vehicle stop, the police needed reasonable suspicion to detain him, and he contends the police did not have reasonable suspicion that he was involved in any criminal activity.

Below, the trial court found defendant was "detained as a passenger of a lawfully stopped car." However, defendant points out, the trial court erroneously found that the vehicle did not turn into the driveway until *after* Officer Williams activated the emergency lights and siren of the police vehicle. At the hearing on the motion to suppress, the officers testified that they "initiated a vehicle stop" *as* the vehicle was pulling into the driveway, and that the stop happened "simultaneously" with the vehicle pulling into the driveway.

Defendant cites no authority for the proposition that persons in a vehicle are not detained when the police effectuate a traffic stop at the same time as the vehicle reaches its destination. Here, the police turned on their patrol car's lights and used their vehicle siren to make a "chirp," then pulled up behind the vehicle while it was pulling into the driveway, where it stopped. The actions of the police clearly conveyed the message that

5

the vehicle's occupants were not free to leave. (See *California v. Hodari D.* (1991) 499 U.S. 621, 628.) The vehicle driver remained in the car after stopping in the driveway, consistent with a submission to the show of police authority. (See *Brendlin, supra,* 551 U.S. at p. 255 ["passive acquiescence" can show that a seizure occurred in response to a show of authority if " 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave' "].) Moreover, defendant himself submitted to that show of authority. Although he exited the vehicle and looked around, he remained standing in the passenger doorway after seeing the police, instead of proceeding to a further destination.

Defendant further argues that even if the officers' actions did produce the vehicle stop, reasonable suspicion to detain defendant should be required under the circumstances of this case. He asserts that because the vehicle had reached its destination, there was less of a concern for officer safety than during a traffic stop that occurs on the side of the road. Further, defendant claims, he was not the typical passenger stuck on the side of the road during a traffic stop, whose travel is "necessarily curtail[ed]" by the stop. (*Brendlin, supra,* 551 U.S. at p. 257.)

We decline defendant's invitation to carve out an exception to the rule that a passenger is necessarily and lawfully detained whenever there is a valid traffic stop of the vehicle in which he or she is riding. Here, as the trial court found, there remained significant officer safety concerns. Although neither officer was in danger of being injured by passing traffic, the paramount concern to officer safety "in a traffic-stop setting" is "the risk of a violent encounter" that may occur because the driver or passenger is motivated to prevent the police from discovering " 'evidence of a more serious crime.' " (*Johnson, supra,* 555 U.S. at p. 331, quoting *Maryland v. Wilson* (1997) 519 U.S. 408, 414.)

6

In sum, we determine that defendant was lawfully detained as the passenger of a vehicle subjected to a valid traffic stop. The police therefore did not require reasonable suspicion to detain defendant.

## B.    *Probation Conditions*

Defendant challenges two of the probation conditions imposed at the sentencing hearing. Defendant requests this court strike the probation condition prohibiting him from possessing a pager or other portable communication equipment, and he requests this court modify the probation condition prohibiting him from possessing, wearing, or displaying any gang-related tattoo.

### 1.    **Proceedings Below**

At the change of plea hearing, the prosecution indicated it would request probation conditions requiring defendant to provide the passwords for his cell phone and social media sites and to submit those items for warrantless searches. Defendant filed a written objection, contending such probation conditions were unreasonable.

The probation report recommended a number of other probation conditions, including a condition that provided: "The defendant shall not possess, wear or display any clothing or insignia, tattoo, emblem, button, badge, cap, hat, scarf, bandanna, jacket or other article of clothing that he/she knows or the Probation Officer informs him/her is evidence of, affiliation with, or membership in a criminal street gang."

At the sentencing hearing, the trial court orally imposed most of the recommended probation conditions, including the condition ordering defendant not to "possess, wear, or display any . . . tattoo" that is gang-related and the condition requiring defendant to provide passwords to "any electronic devices, including cell phones" and to submit such devices to warrantless searches.

The clerk's transcript contains an unsigned document entitled "Conditions of Sentence/Probation (Gang)," which contains the probation conditions the trial court imposed at sentencing, but which also contains the following probation condition, which

7

the trial court did not orally impose: "The defendant shall not possess or be involved in the use of a telephone pager device or any other portable communication equipment."

### 2.    Portable Communication Equipment Condition

Defendant contends that the condition barring him from possessing any "portable communication equipment" must be stricken. He contends this condition "conflicts with the oral imposition of sentence . . . and interferes with his constitutional rights under the First Amendment."

The Attorney General agrees that the oral pronouncement of the probation conditions should govern in this case. (See *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346 [oral conditions of probation controlled "in light of the circumstances," where trial judge did not sign the written probation conditions nor mention them at the hearing].) The Attorney General notes that the written probation conditions also include a condition regarding dangerous or deadly weapons, which the trial court had expressly stricken, suggesting this further shows that "the reporter's transcript more reliably chronicles the probation conditions actually imposed" than the written document entitled "Conditions of Sentence/Probation (Gang)."

In light of the record and the Attorney General's concession, we will strike the probation condition prohibiting defendant from possessing or using "a telephone pager device or any other portable communication equipment."

### 3.    Tattoo Condition

Defendant next challenges the probation condition ordering him not to "possess, wear, or display any . . . tattoo" that is gang-related. He contends the condition "could be read to require a probationer with an existing gang-related tattoo to have it removed." He points out that tattoo removal can be a painful procedure that can lead to scarring. Defendant requests this court modify the condition to specify that "he shall not be required to remove the tattoos on his body that existed at the time of sentencing." (See *People v. Lopez* (1998) 66 Cal.App.4th 615, 638.)

8

The Attorney General "does not object" to defendant's proposed modification. Therefore, we will add the above language to the condition.

## IV.   DISPOSITION

The judgment is modified in the following particulars.

First, the probation condition that provides, "The defendant shall not possess or be involved in the use of a telephone pager device or any other portable communication equipment" (condition No. 9 on the written document entitled "Conditions of Sentence/Probation (Gang)") is stricken.

Second, the probation condition that provides, "You shall not possess, wear, or display any clothing or insignia, tattoo, emblem, button, badge, cap, scarf, bandanna, jacket or other article of clothing that you know or the Probation Officer informs you is evidence of affiliation with or membership in a criminal street gang" is modified to read as follows:

"You shall not possess, wear, or display any clothing or insignia, tattoo, emblem, button, badge, cap, scarf, bandanna, jacket or other article of clothing that you know or the Probation Officer informs you is evidence of affiliation with or membership in a criminal street gang, except that you shall not be required to remove the tattoos on your body that existed at the time of sentencing."

As modified, the judgment is affirmed.

9

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MIHARA, J.

_____

GROVER, J.

10