Filed 4/6/15  P. v. Murray CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C076661 |
| Plaintiff and Respondent, | (Super. Ct. No. MM125766C) |
| v. | |
| BRYANT DUANE MURRAY, | |
| Defendant and Appellant. | |

After the denial of his motion to suppress, defendant Bryant Duane Murray entered a plea of no contest to a charge of impersonation, with a stipulated term of two years in state prison.  In exchange, the trial court dismissed a charge of carrying a concealed (steak) knife and multiple recidivist allegations.

On appeal, defendant challenges the denial of his motion to suppress.  He contends the evidence of impersonation that caused the officer to focus on him was the result of an

unduly prolonged traffic stop, and his possession of the concealed knife was the product of a subsequent unlawful patdown search. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant premised his written motion to suppress on facts from the testimony of the arresting officer at his preliminary hearing (the transcript of which the trial court reviewed). The arresting officer also testified at the hearing on the motion. We therefore draw our facts from both sources, resolving all conflicts in favor of the trial court's ruling. (*People v. Hernandez* (2008) 45 Cal.4th 295, 298-299 (*Hernandez*).)

The officer had been patrolling the City of Tracy in the early morning hours of February 22, 2013, when he stopped a car being driven with an inoperable headlight at 4:50 a.m. Defendant—one of three passengers—was sitting behind the driver. The officer requested the requisite documentation from the driver to confirm his identity and to submit a warrant check, as well as requesting the three passengers to identify themselves for purposes of warrant checks. When he asked the occupants of the car if anyone was on probation, no one answered.

Further clarifying this testimony at the hearing, the officer stated he contemporaneously asked for identification from the three passengers when he asked for the information from the driver (subject to the caveat that "I can't talk to everybody at the same time"). "Once [he] got all the ID's," he began checking names with dispatch for warrants via the radio on his person, starting with the driver but also providing the other names as well. It took one or two minutes to confirm the driver's information, and a total of two to four minutes to obtain the remaining results. Defendant had given a false first name (Ozell). The officer asserted that the absence of any match in the records for the name defendant had given made the officer believe it was a false name, based on his "training and experience" and the fact that defendant had offered alternative spellings of his supposed given name.

2

The officer asked the driver to get out of the car. This was about two to four minutes after the start of the traffic stop. He also obtained the driver's permission to conduct a search of the car, even though he had sufficient information for issuing a traffic citation to him at this point. (The officer did not testify about finding anything in the course of the subsequent search.)

The officer asked defendant to step out of the car about a minute after the driver. Defendant again did not respond when the officer asked if he was on probation. The officer told him he was going to conduct a patdown search. The officer testified that he was concerned about defendant wearing loose clothing; based on his experience "people are known to carry weapons in the waistband."[1] When the officer started to search defendant's person, defendant admitted that he had a steak knife in his back pocket (which his shirttail and coat had concealed) and (after the officer found an ankle monitor) that he was on probation. Defendant continued to maintain, however, that his given name was Ozell; the officer eventually cited him for possession of the knife under that name when the defendant's booking fingerprints also did not return a match.

The actual Ozell Murray came to the police station in June 2013 to identify himself and clear his name. He explained that his brother (defendant) had provided Ozell's name two or three times to police. Ozell Murray gave the officer defendant's real name.

The trial court determined that the permissible identification query of a passenger led to a circumstance reasonably raising the officer's suspicions about defendant (the absence of any records match) that had in essence occurred simultaneously with the completion of the process for citing the driver: "After . . . receiv[ing] information that

---

[1] The officer acknowledged that he had not seen anything otherwise suspicious in the course of the traffic stop.

the defendant had given a false identity *at or about the same time* he received information regarding the driver, [the officer] had a reasonable suspicion sufficient to continue his investigation of the defendant" (italics added). The court denied the motion on that basis, without considering the argument regarding defendant's probationary status that the prosecution had raised in its written opposition (as an alternate justification for the patdown search).

## DISCUSSION

A police officer with a reasonable articulable basis for suspecting a violation of the Vehicle Code or criminal activity may properly detain a vehicle in a traffic stop; for purposes of constitutional analysis, all of its occupants have standing to challenge the detention as a "seizure." (*Hernandez, supra*, 45 Cal.4th at p. 299; *Brendlin v. California* (2007) 551 U.S. 249, 251 [168 L.Ed.2d 132, 136].) In the course of a traffic stop, an officer is entitled to ask all of those detained for identification; running a check for any outstanding warrants connected with these identifications or questioning the detainees about possible probationary status is permissible as long as it does not prolong the detention beyond the time ordinarily necessary to investigate its basis and respond with appropriate action. (*People v. Vibanco* (2007) 151 Cal.App.4th 1, 13, citing *Muehler v. Mena* (2005) 544 U.S. 93, 100-101 [161 L.Ed.2d 299, 308-309]; *People v. Brown* (1998) 62 Cal.App.4th 493, 498-500.)

Defendant does not dispute the legitimate basis for the traffic stop. In his version of the facts, however, he contends the officer did not develop his suspicion that defendant was falsely identifying himself until *after* the officer had prolonged the traffic stop beyond the scope of performing the duties connected with the circumstances that had justified it, in violation of the holdings in *People v. McGaughran* (1979) 25 Cal.3d 577, 584, 586, 587 and *Williams v. Superior Court* (1985) 168 Cal.App.3d 349, 358-359.

4

However, defendant's argument founders on two obstacles, one that is legal and one that is based on our standard of review of the facts.

We note that *People v. Durant* (2012) 205 Cal.App.4th 57 (a case not cited by either party) has held that an officer's *mistake* about the legitimacy of the basis for a traffic stop does not require exclusion of evidence obtained as a result, because the illegal "taint" of the detention was dissipated in light of the defendant's subsequently discovered probationary status. (*Id*. at p. 66.) (*People v. Bates* (2013) 222 Cal.App.4th 60 declined to follow this holding in the circumstance where an officer did not have any reasonable basis for the traffic stop other than a "mere hunch" (*id*. at pp. 67, 70-71), which is not the state of the present record.) Arguably, this rule could apply to an illegally prolonged detention as well. But we do not need to resolve this legal question.

Defendant's efforts to parse the facts into discrete components, in which the processing of the driver's traffic violation ended before the results of the records check for defendant's false name, falls afoul of the trial court's resolution of the officer's explanation of his actions. Its characterization of the two processes as being essentially simultaneous has support in the record, and we (*and* defendant) must consequently defer to it. As a result, the officer did not prolong the authorized detention in any appreciable amount before developing independent reasonable suspicions about defendant's criminal activity. We therefore reject this fork of his argument.

As for defendant's challenge to the legality of the patdown search, we quote from a recent decision of this court (on which the prosecution relied in the trial court, but which neither party cited on appeal), which is applicable in the present case as well. "In their original briefing on appeal, the parties argued only whether the search was valid . . . . Neither party considered the estoppel theory raised by the [prosecution in opposition to] defendant's . . . motion. We requested supplemental briefing on that issue." (*People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408.) That defendant, as in

5

the present case, supplied his brother's name during a traffic stop, which did not reveal any probationary status during the records check (although that defendant had mentioned being on probation to the officer). Based on that defendant's statement but without knowledge of the actual search condition of his probation, the officer searched the car, finding controlled substances. (*Id*. at p. 1406.) We concluded in *Watkins* that the action of affirmatively preventing the officer from learning about the actual probationary status of that defendant estopped him from arguing that the officer illegally conducted a probation search without preexisting knowledge of the actual search condition. (*Id*. at pp. 1409-1410.)

The People agree that estoppel applies in the present case to uphold the patdown search. Defendant argues the estoppel argument is "waived" ("forfeited" is the correct term) because the prosecutor did not urge it at the hearing. This is an insufficient basis on which to argue forfeiture. The prosecutor apparently chose to focus on the merits of the validity of the patdown search at the hearing (perhaps feeling it to be the stronger argument), but never explicitly abjured the fallback estoppel argument, which was a question of law on undisputed facts that did not require further litigation. It was a theory of which defendant had notice, and to which apparently he chose not to respond. None of the purposes of the forfeiture rule are served in applying it to the present instance, which preclude raising an issue *in the first instance* on appeal because it is unfair to the trial court and the opponent, contrary to judicial efficiency, and also encourages the practice of embedding reversible error. (*People v. Crockett* (2015) 234 Cal.App.4th 642, 651.) Defendant also asserts the present case is distinguishable, but his focus is on the lack of basis for the present detention, which does not have any bearing on applying estoppel to a patdown search after upholding the initial detention. We therefore reject his challenge to the patdown search.

## DISPOSITION

The judgment is affirmed.

                                          BUTZ            , J.

We concur:

    BLEASE       , Acting P. J.

    NICHOLSON   , J.